1

2

3

4

5

6

7

8

9           IN THE UNITED STATES DISTRICT COURT

10              FOR THE DISTRICT OF OREGON

11  BANCARD SERVICES, INC., a    )
    Montana corporation; and CASH    )
12  RESOURCES, INC., a Colorado  )
    corporation,                 )   No. CV-01-1741-HU
13                               )
                 Plaintiffs,     )
14                               )
          v.                     )
15                               )
    E*TRADE ACCESS, INC., an     )   FINDINGS & RECOMMENDATION
16  Oregon corporation,          )
                                 )
17              Defendant.       )
    _____)

18

19  F. Gordon Allen
    ALLEN & O'HALLORAN
    1300 S.W. Fifth Avenue, Suite 2750
20  Portland, Oregon 97201-5617

21       Attorney for Plaintiffs

22  Donald E. Templeton
    Elizabeth C. Knight
23  DUNN CARNEY ALLEN HIGGINS & TONGUE
    851 S.W. Sixth Avenue, Suite 1500
24  Portland, Oregon 97204-1357

25       Attorneys for Defendant

26  HUBEL, Magistrate Judge:

27       Plaintiffs Bancard Services, Inc. and Cash Resources, Inc.,

28  bring this declaratory relief action against defendant E*Trade

1 - FINDINGS & RECOMMENDATION

1  Access, Inc.   Both parties move for summary judgment.   I
2  recommend that plaintiffs' motion be granted in part and that
3  defendant's motion be denied.

4                           BACKGROUND

5       Plaintiff Bancard Services is a Montana corporation.
6  Plaintiff Cash Resources, Inc. is a Colorado corporation.
7  Bancard and Cash Resources maintain and service ATM machines on
8  business premises pursuant to written service agreements.

9       Defendant is an Oregon corporation which competes with
10 plaintiffs in the ATM industry.  Defendant markets, installs,
11 and services ATMs throughout the United States.  As a result of
12 defendant's acquisition of a company called Card Capture
13 Services, Inc. (CCS), an Oregon corporation with many ATM
14 service agreements, defendant is the successor to CCS's service
15 agreements.

16      The CCS contracts which defendant acquired give defendant
17 the exclusive right to service the ATM machines.  The contracts
18 are known as "Site Location Agreements."  They were entered into
19 with numerous businesses or "Locations" across the country.
20 Among other things, each Location agreed to place a particular
21 ATM model on its premises and make the ATM available to Location
22 customers during normal business hours.  CCS agreed to pay the
23 Locations for each transaction at the ATM.

24      There are several different versions of the Site Location
25 Agreements.  The three of interest in this lawsuit are the 1995,
26 1996, and 1997 versions.  The 1995 and 1996 versions contain the
27 following provision:

28      12.  Term.  This Agreement shall be for a term of five

2 - FINDINGS & RECOMMENDATION

(5) years from the date of installation, unless
amended or terminated by written agreement signed by
both Company and Location or terminated by Company
pursuant to paragraph 15, below. Notwithstanding
anything contained herein to the contrary, Company
shall have the option, in its sole discretion, to
extend this Agreement for additional periods of five
(5) years each.

Exhs. 1 and 2 to Stip. Related to Discovery at ¶¶ 12.

The 1997 Agreements contain the following renewal language:

This Agreement shall be for a term of five (5) years
from the date of installation, unless amended or
terminated by written agreement signed by both Company
and Location, or terminated as set forth below. Upon
the expiration of the initial term, this Agreement may
be renewed by Company for an additional period of five
(5) years.

Stip. Related to Discovery at ¶ 6.

The parties agree that all of the CCS Site Location
Agreements acquired by defendant also provide that they are to
be construed, interpreted, and enforced in accordance with
Oregon law.

Plaintiffs have urged, and want to continue to urge,
defendant's Locations to switch transaction processing
providers. Plaintiffs want to assure those Locations that they
can terminate their contracts with defendant without liability.
If plaintiffs are wrong about their interpretation of Oregon law
as applied to these contracts, plaintiffs fear that they run the
risk of substantial liability to both customers and defendant.
Plaintiffs are concerned that defendant may sue them for
tortious interference with contract. Thus, they seek a
declaratory judgment determining that the above contract
language constitutes an invalid perpetual agreement terminable
at will under Oregon law.

3 - FINDINGS & RECOMMENDATION

1    Defendant counterclaims for declaratory and injunctive
2  relief.    Defendant seeks a declaration that the renewal
3  provisions are valid and enforceable.    Defendant seeks an
4  injunction enjoining plaintiffs from contacting, soliciting, or
5  interfering with defendant's customers.    Defendant also
6  counterclaims for damages for plaintiffs' actions in soliciting
7  defendant's customers which have resulted in those customers
8  breaching their contracts with defendant and doing business with
9  one or both plaintiffs instead.

10                               STANDARDS

11    Summary judgment is appropriate if there is no genuine issue
12  of material fact and the moving party is entitled to judgment as
13  a matter of law.    Fed. R. Civ. P. 56(c).    The moving party bears
14  the initial responsibility of informing the court of the basis
15  of its motion, and identifying those portions of "'pleadings,
16  depositions, answers to interrogatories, and admissions on file,
17  together with the affidavits, if any,' which it believes
18  demonstrate the absence of a genuine issue of material fact."
19  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.
20  R. Civ. P. 56(c)).

21    "If the moving party meets its initial burden of showing
22  'the absence of a material and triable issue of fact,' 'the
23  burden then moves to the opposing party, who must present
24  significant probative evidence tending to support its claim or
25  defense.'"    Intel Corp. v. Hartford Accident & Indem. Co., 952
26  F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen
27  Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)).    The
28  nonmoving party must go beyond the pleadings and designate facts

4 - FINDINGS & RECOMMENDATION

1  showing an issue for trial.  <u>Celotex</u>, 477 U.S. at 322-23.

2       The substantive law governing a claim determines whether a

3  fact is material.  <u>T.W. Elec. Serv. v. Pacific Elec. Contractors

4  Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts

5  as to the existence of a genuine issue of fact must be resolved

6  against the moving party.  <u>Matsushita Elec. Indus. Co. v. Zenith

7  Radio</u>,   475 U.S. 574, 587 (1986).   The court should view

8  inferences drawn from the facts in the light most favorable to

9  the nonmoving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.

10      If the factual context makes the nonmoving party's claim as

11  to the existence of a material issue of fact implausible, that

12  party must come forward with more persuasive evidence to support

13  his claim than would otherwise be necessary.  <u>Id.</u>; <u>In re

14  Agricultural Research and Tech. Group</u>, 916 F.2d 528, 534 (9th

15  Cir. 1990); <u>California Architectural Bldg. Prod., Inc. v.

16  Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).

17                           DISCUSSION

18      Plaintiffs make two arguments:  (1) that the renewal

19  provision lacks the language required to establish a valid

20  perpetual agreement and thus, the contracts are, in fact,

21  terminable at will with reasonable notice after the expiration

22  of the initial five-year term; and (2) that even if the

23  provisions are construed as perpetual agreements, they are void

24  because they act as a restraint of trade.  For the reasons

25  explained below, I agree with plaintiffs that the renewal

26  provision does not create a valid perpetual agreement and thus,

27  I do not reach the alternative restraint of trade argument.

28      There appear to be three relevant Oregon cases.  First, in

5 - FINDINGS & RECOMMENDATION

a 1955 Oregon Supreme Court case, the court resolved an issue regarding the perpetual nature of a real property lease. McCreight v. Girardo, 205 Or. 223, 287 P.2d 414 (1955). The relevant provision in the lease stated: "Lessee shall have the option of renewal of this lease, on the same rental basis and on the same terms, from year to year, for a like period of one year." Id. at 231, 287 P.2d at 415.

The court generally noted that "perpetual leases are not favored and . . . a perpetual renewal clause will not be upheld unless the renewal provision be clear and unambiguous." Id. at 235, 287 P.2d at 417 (internal quotation omitted). The court explained that this was "not a rule that parties may not enter into an enforceable agreement for successive renewals of a lease. . . . It is a rule of construction." Id. (citation omitted).

> Covenants for continued renewals are not favored,
> because they tend to create a perpetuity; hence, the
> courts will not construe a lease as conferring a right
> to perpetual renewals, unless it clearly so provides
> in unequivocal language so plain as to leave no doubt
> of the purpose.

Id. (internal quotation omitted).

The court found that the lease's renewal provision did not create a perpetual lease:

> The term 'from year to year', in connection with
> a renewal right, is construed almost universally to
> provide for but a single renewal, the courts stating
> that the words do not in themselves import an
> intention to provide for perpetual renewals, such as
> the clear and unambiguous words 'in perpetuity',
> 'forever', or words of similar import. . . . .
>
> The words 'for a like period of one year' do not
> aid the defendant for they import no more than that
> the term of renewal shall be on a yearly basis.

6 - FINDINGS & RECOMMENDATION

The instrument before us provides for but a single renewal of the lease.

Id. at 239, 287 P.2d at 419.

In a 1973 case, the court reiterated the general principle that "perpetual agreements are disfavored[.]" Portland Section of the Council of Jewish Women v. Sisters of Charity of Providence in Or., 266 Or. 448, 456, 513 P.2d 1183, 1187 (1973). The court also noted that although disfavored, "where clearly provided for [perpetual agreements] will be enforced according to their terms." Id. The court noted that in determining whether an agreement is perpetual, "[a]ll circumstances of each case must be considered in reaching a conclusion and, if consideration for the promise is fully executed, courts are reluctant to hold the promise terminable." Id.

The Sisters of Providence court easily determined that the provision at issue was a perpetual agreement because of language which read: "first party hereby agrees to furnish ward accommodation in perpetuity to one . . . ." Id. at 456 n.1, 513 P.2d at 1187 n.1. The court described the contract as "clearly perpetual by its terms[.]" Id. at 456, 513 P.2d at 1188.

The McCreight and Sisters of Providence cases are consistent in that they both express the general statements that perpetual agreements are disfavored, but will be upheld when a contract contains clear and unambiguous terms describing its perpetual nature. In McCreight where there was a renewal clause which contained no such terms, the agreement was not perpetual and was terminable. In contrast, in Sisters of Providence where the parties used the term "in perpetuity" in the renewal clause,

7 - FINDINGS & RECOMMENDATION

1   there was a clear expression of the parties' intent.

2       In 1998, the Oregon Court of Appeals considered a case

3   concerning country club memberships.    Paul Gabrilis, Inc. v.

4   Dahl, 154 Or. App. 388, 961 P.2d 865 (1998).    There, the

5   plaintiff country club attempted to terminate certain membership

6   agreements.    The defendant members argued that the agreements

7   were perpetual and non-terminable.    The court held for the

8   defendants.

9       The plaintiff argued that because the agreements contained

10  no definite term on their duration, they were terminable at will

11  by either party. See Lund v. Arbonne Int'l, Inc., 132 Or. App.

12  87, 90, 887 P.2d 817, 820 (1994) (reciting general proposition

13  that contracts that are for an indefinite period may be

14  terminated at will with reasonable notice).

15      The court stated that the plaintiff's reliance on this

16  general rule was "misplaced." Gabrilis, 154 Or. App. at 394,

17  961 P.2d at 868.    The court explained:

18      It is true that if there is nothing in the nature or
        language of a contract to indicate that the contract
19      is perpetual, courts will interpret the contract to be
        terminable at will on reasonable notice.
20      Nevertheless, where provided for, perpetual agreements
        will be enforced according to their terms. . . . All
21      the circumstances of each case must be considered in
        reaching a conclusion on the intended duration of the
22      contract.

23  Id. (citation omitted).

24      The court then assessed several provisions in the contract

25  and concluded that taken together, the memberships were intended

26  to be perpetual, in force as long as the members continued to

27  pay their dues and to abide by the club's rules. Id. The court

28  concluded that "[b]ecause the membership agreements contain a

8 - FINDINGS & RECOMMENDATION

1  number of provisions inconsistent with a conclusion that the
2  agreement is terminable at will, . . . the trial court correctly
3  concluded that the agreements could be terminated only for
4  cause." Id. at 395, 961 P.2d at 868.

5      One distinguishing fact about Gabrilis is that the agreement
6  there lacked an express renewal provision.  As a result, the
7  court was not directed to the actual text of a particular
8  clause.  Without an express renewal provision, the contract was
9  ambiguous on the perpetuity issue and the court went beyond the
10 text to the context of the other contractual provisions to
11 interpret the perpetual nature, or lack thereof, of the
12 agreement.  In contrast, in McCreight and Sisters of Providence,
13 the contracts at issue in those cases contained an express
14 renewal clause that controlled the court's analysis.  Neither of
15 those two cases discussed other contractual language.

16     Plaintiffs rely heavily on McCreight.  Because the renewal
17 provisions of the 1995, 1996, and 1997 Site Location Agreements
18 contain no words such as "perpetual" or "forever," plaintiffs
19 argue that under McCreight, there is no plain and unambiguous
20 statement of a perpetual renewal and no reason to imply or
21 construe such a right of renewal.

22     Plaintiffs argue that Gabrilis is the "flip side" of the
23 instant case because there, there was no express duration
24 provision and all other provisions suggested an intention that
25 the agreement be perpetual.  Plaintiffs argue that here, the
26 opposite is true.  Plaintiffs note that none of the provisions
27 that one would expect in a perpetual agreement are present.
28 Plaintiffs note that there is no provision for negotiations,

9 - FINDINGS & RECOMMENDATION

adjustment, and accommodations that changing circumstances would undoubtedly require over a long period of time. Plaintiffs contend that there are no express provisions in the Site Location Agreements that when "taken together," lead to the conclusion that the parties intended a perpetual agreement.

In contrast, defendant argues that plaintiffs' reliance on McCreight is misplaced. Defendant notes that there, the issue was a real property lease. Additionally, defendant notes that the "from year to year" and "for a like period of one year" language in that lease agreement was ambiguous and thus, because the renewal provision was not expressed in plain and unambiguous terms, the court found that it was not perpetual.

Here, defendant argues, the renewal clause of the 1995 and 1996 Site Location Agreements is clearly perpetual because it states that defendant can extend the agreement "for additional periods of five (5) years each." Defendant argues that the words are not open to interpretation because they are stated in plain and unambiguous terms.

Both parties also cite a Washington case cited in the McCreight case. In Tischner v. Rutledge, 35 Wash. 285, 77 P. 388 (1904), the court construed a real property lease which contained a provision for monthly rent terminating in April 1901 "with the privilege at the same rate and terms each year thereafter from year to year." Id. at 286, 77 P. at 388. In determining that the lease did not create a right of perpetual renewal, the court noted the absence of terms such as "in perpetuity" and "forever" or words to that effect. Id. at 289, 77 P. at 389. As to the actual language of the renewal

10 – FINDINGS & RECOMMENDATION

provision, the court explained:

> Moreover, the phrase used which is thought to create the perpetual right is of itself likely to conceal its real meaning. When we speak of a thing as continuing from year to year, it is only on second thought that we conclude it means forever. This we do not think is the direct and unequivocal language necessary to create a lease of the character contended for.

Id. at 289, 77 P. at 389-90.

Plaintiffs argue that because the renewal provision in the instant case lacks the clear and unambiguous words of "in perpetuity" or "forever," the provision requires a "second thought" to conclude it is perpetual as expressed in Tischner and thus, the language is insufficient to create a perpetual renewal provision. Conversely, defendant argues that it is inconceivable how the provision at issue here could require a "second thought" to construe its perpetual meaning.

The language in the renewal clause in the 1995 and 1996 versions of the Site Location Agreements is materially different from that seen in the 1997 Site Location Agreements and must be separately analyzed. As to the 1995 and 1996 version, I agree with plaintiffs that without language such as "forever," or "in perpetuity," the clause is not clear and unambiguous enough to demonstrate that the parties intended to create a perpetual agreement.

First, I reject defendant's assertion that cases interpreting real property leases are inapplicable to the lease here. Defendant cites no cases upholding this distinction and I have found none. More importantly, I see no fundamental reason why the renewal provision of a real property lease and the lease at issue here should be examined differently.

11 - FINDINGS & RECOMMENDATION

1    Second, I do not read <u>Gabrilis</u> as being at odds with
2   <u>McCreight</u> and <u>Sisters of Providence</u>.  The latter two cases were
3   decided before the Oregon Supreme Court refined its analysis for
4   resolving contractual ambiguities.  In <u>Yogman v. Parrott</u>, 325
5   Or. 358, 361, 363, 937 P.2d 1019, 1021, 1022 (1997), the court
6   set forth the procedure as requiring first an analysis of the
7   text of the disputed term, then an analysis of the context
8   within the contract as a whole.  <u>McCreight</u> and <u>Sisters of</u>
9   <u>Providence</u> are cases where examination of the renewal terms in
10  question resolved the question.  In <u>Gabrilis</u>, the court had to
11  go one step further to examine the context of the disputed term
12  within the contract as a whole.  Unlike <u>Gabrilis</u>, the contract
13  at issue here contains an express renewal clause and thus, the
14  focus of the analysis is initially on the text appearing there.
15  Because of the lack of words such as "forever" or "perpetual,"
16  the language is ambiguous enough to require a "second thought"
17  to conclude it is perpetual and thus, as in <u>Tischner</u>, it is
18  insufficient to create a perpetual renewal provision.

19    Additionally, examining the renewal clause in the context
20  of the contract as a whole, the renewal provision still fails to
21  clearly create a perpetual renewal.  The only provision that
22  could possibly suggest that the Site Locations Agreements were
23  intended to be perpetual is the cancellation provision under
24  which either party can terminate the lease in the event the
25  other party defaults.  Exhs. 1 and 2 to Stip. Rel. to Dis. at ¶¶
26  15.

27    Under <u>Gabrilis</u>, the inclusion of specific grounds for
28  termination in an agreement can, but does not always, indicate

12 - FINDINGS & RECOMMENDATION

that the agreement may be terminated only for cause. <u>Gabrilis</u>, 154 Or. App. at 395, 961 P.2d at 868. Here, however, the provision is better understood as a default provision rather than a termination for cause provision. Therefore, it is not indicative of a perpetual agreement.

Based on the requirement that the perpetual nature of the agreement be expressed in clear and unambiguous language, and the lack of such language in the 1995 and 1996 agreements, I conclude that the renewal provision in these agreements does not create perpetual renewals.

While I agree with plaintiffs that the 1995 and 1996 Site Location Agreements are not perpetual, I disagree with plaintiffs that they are terminable at will with reasonable notice after the initial five-year contract period. As noted in <u>McCreight</u>, phrases such as "from year to year" do not support a perpetual agreement, but will support a single renewal. <u>McCreight</u>, 205 Or. at 239, 287 P.2d at 419. As explained in a West Virginia case, phrases such as "from year to year" or "a like period of time" do not create a perpetuity, but will provide for one additional term, equal to the first. <u>Lawson v. West Virginia Newspaper Publ'g Co.</u>, 29 S.E. 2d 3 (Sup. Ct. 1944).

There, the court stated that

[a] general covenant to renew or a covenant to renew with like terms, conditions, and covenants, does not import a renewal covenant in the renewal lease. . . . It is quite plain that a lease containing a covenant to renew at its expiration with similar covenants, terms, and conditions contained in the original lease is fully carried out by one renewal without the insertion of another covenant to renew. Otherwise a perpetuity is provided for. . . . It is the rule that

13 - FINDINGS & RECOMMENDATION

a provision in a lease in general terms for a renewal
or continuance of the lease will be construed as
providing for only one renewal. . . . A general
covenant to extend or renew implies an additional term
equal to the first, upon the same terms, including
that of rent, except the covenant to renew; to include
which would make the lease perpetual.

Id. at 4-5 (citations and internal quotations omitted).

While the renewal provisions in the 1995 and 1996 Site
Location Agreements cannot be sustained as perpetual, the words
the parties used giving defendant the option to renew, in
particular the words allowing defendant "to extend this
Agreement for additional periods of five (5) years each[,]"
clearly suggest that the parties intended a period of renewal.
Following the discussion from Lawson and McCreight concerning
renewal provisions, the proper construction of the language in
the 1995 and 1996 Agreements is that after the initial five-year
period, there is one additional renewal period at defendant's
option.  Following that one renewal, the 1995 and 1996
agreements are terminable at will by either party with
reasonable notice.

As for the 1997 Site Location Agreement, the renewal
provision there clearly provides for a single five-year renewal
period.  The language, "an additional period of five (5) years"
cannot reasonably be interpreted any other way.  Thus, with the
1997 Site Location Agreements, the Agreements are valid for an
initial five-year period and may be renewed by defendant for one
additional five-year term.  As with the 1995 and 1996
agreements, after the one renewal, the 1997 agreements are
terminable at will by either party with reasonable notice.

CONCLUSION

14 - FINDINGS & RECOMMENDATION

1    I recommend that plaintiffs' motion for summary judgment
2    (#33) be granted to the extent that plaintiffs seek a
3    declaration that the 1995, 1996, and 1997 Site Location
4    Agreements are not perpetual in nature.  I recommend that
5    plaintiffs' motion be denied to the extent that plaintiffs seek
6    a declaration that the 1995, 1996, and 1997 Site Location
7    Agreements are terminable at will, after reasonable notice,
8    after the initial five-year period.  I further recommend that
9    defendant's motion for summary judgment (#45) be denied.

10                          SCHEDULING ORDER
11    The above Findings and Recommendation will be referred to
12    a United States District Judge for review.  Objections, if any,
13    are due November 19, 2002.  If no objections are filed, review
14    of the Findings and Recommendation will go under advisement on
15    that date.   If objections are filed, a response to the
16    objections is due December 3, 2002, and the review of the
17    Findings and Recommendation will go under advisement on that
18    date.

19
20                    Dated this  4th   day of  November     ,
21    2002

22
23                               /s/ Dennis James Hubel
24                              Dennis James Hubel
                                United States Magistrate Judge
25
26
27
28

15 - FINDINGS & RECOMMENDATION